# Bush *versus* Breinig.

If one bids at a public sale of real estate and has the property struck down to him, and he afterwards, when in such a state of drunkenness as to suspend the use of reason and understanding, and not to know what he is doing, executes a written contract complying with the terms of the sale and pays a portion of the purchase money, he may avoid the contract, and in an action of assumpsit recover the portion of the purchase money paid:

February 16th, 1886. Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. ·GORDON, J., absent.

ERROR to the Court of Common Pleas of *Lehigh county:* Of January Term 1885, No. 443.

OF PENNSYLVANIA.

[Bush v. Breinig.]

This was an action of assumpsit, brought by James H. Breinig against William H. Bush, to recover the portion of the purchase money paid by him in pursuance of a contract executed when, he alleges, he was in such a state of drunkenness as not to know what he was doing, and had lost the use of his reason and understanding. Plea, non assumpsit, payment with leave.

The following are the facts as they appeared on the trial, before ALBRIGHT, P. J.:

William H. Bush, the owner of a hotel property in Quakertown, offered the same for sale at a public sale, on October 24th, 1883. Breinig attended the sale, and became the purchaser at $13,400, he being the highest bidder. About an hour after the property was knocked down to him he executed a written contract in conformity with the conditions of the sale, paid $495 in cash, and gave his note for $845. Breinig alleged that at the time he signed the contract, gave the note and paid the cash, he was in such a state of drunkenness as to suspend his reason and understanding. On November 24th, 1883, he brought this suit.

On the trial, the plaintiff being on the stand, his counsel asked the following question:

What did Mr. Bush tell you whilst you were in an intoxicated condition in regard to this property, when you walked out to the shed?

Objected to on the ground that there is no evidence of intoxication.

The Court understands the plaintiff's allegation to be that at this point of time the plaintiff was intoxicated. In view of that position this question may be answered. The objection is overruled and a bill sealed for the defendant.

Answer. He told me there was a fortune in it if I would buy this property. (Fifth assignment of error.)

The defendant presented the following points:

1. In the absence of unfair advantage, the drunkenness which will relieve the party from his contract must be such as utterly deprives a party of his reason and understanding.

Answer. The alleged drunkenness of plaintiff, to relieve him from the contract, must have been such that he did not know what he was doing; it must have been such as to suspend the use of reason and understanding; further answer is declined. (First assignment of error.)

2. A contract reasonable in itself, entered into by a person in a state of excitement from excessive drink, will not be avoided in law or equity.

Answer. Affirmed. Excitement from excessive drink alone will not avoid the contract. The reasonableness of this con-

[Bush *v.* Breinig.]

tract, however, as this case is presented, has nothing to do with the contract in this case.

3. If the jury believe that at this public sale the plaintiff purchased the property of the defendant, and entered into the conditions of sale and paid down the money sought to be recovered, and the fact of intoxication was unknown to the defendant and his agents, he will be held to the terms of the contract.

Answer. Negatived.    (Second assignment of error.)

4. If the jury believe that the plaintiff purchased the property understanding the conditions of sale, and the contract of purchase was read to the plaintiff, he cannot now disaffirm the contract and recover back the money.

Answer. Negatived. (Third assignment of error.)

5. If the jury believe that the plaintiff at the time he entered into the contract was able to comprehend the meaning, nature and effect thereof, the alleged intoxication is no defence.

Answer. Affirmed.

In the general charge the Court instructed the jury, *inter alia,* as follows:

[The money which Mr. Breinig paid, he paid in affirmance of the contract which was made to purchase this hotel property, and the only ground which he has laid, supported by evidence, upon which he can recover it, is that the contract did not bind him because he was intoxicated to such a degree that he did not know what he was doing at the time he paid the money and signed the conditions of sale. Under the evidence we have, Mr. Breinig is bound by the contract, and is obliged to fulfil it; he certainly cannot sue in avoidance of his contract; he cannot recover back the money now in question, unless he can show that it was not his contract. The law is, that where a party, when he enters into a contract, is in such a state of drunkenness as not to know what he is doing, the contract is void, and he cannot be compelled to perform it.] (Fourth assignment of error.)

Drunkenness, to relieve a party from his contract, must be so complete as to have suspended the use of reason and understanding. It is not enough to entitle a party to repudiate the contract to show that he had been drinking. He must show that his mind was so impaired by the use of the intoxicant that he no longer had the power to exercise reason and understanding. If that is shown, then the contract as between the parties to it cannot be enforced. [You will inquire, gentlemen, whether the plaintiff has proved that he was so drunk at the time he paid the money, and signed the conditions of sale, that he did not know what he was doing. Had

[Bush *v.* Breinig.]

he the use of reason and understanding? If he had been drinking and still knew what he was doing, then he is bound, and the point of time you are to direct your inquiry to is the time when the money was paid and the conditions signed. The question is, was he then capable of making a binding contract?] (Sixth assignment of error.)

Verdict for the plaintiff in the sum of $495 and judgment thereon, whereupon the defendant took this writ, assigning for error, *inter alia,* the admission of evidence, the answer of his points, and those portions of the general charge included within brackets.

*John D. Stiles (Henry G. Stiles* with him), for plaintiff in error.—Drunkenness must rise to that degree which may be called excessive, where the party is utterly deprived of the use of his reason and understanding: Story's Equity, § 231. Breinig went to this public sale for the purpose of purchasing this property, and was the successful bidder. The conditions of sale were read in his hearing, and he bid $13,400. He knew by the conditions that he was to pay ten per cent. upon signing the agreement of purchase. He signed the agreement, counting out $495, and giving a note at sixty days for $845, making the ten per cent. The proof is that at the time he bid on the property, and at the time it was struck down to him, he was sober and able to understand what he was doing. This was the point of time when he became liable to comply with the conditions of sale. "He was not so drunk at the time the property was struck down to him, or so imbecile from long habits of drunkenness when he paid the money and signed the note, as not to know what he was about, or not to understand the nature of the contract, or not to have any correct appreciation of the business in which he was engaged": McClure *v.* Mansell, 4 Brewster, 126.

An agreement by a person in a state of complete intoxication is void: ELLENBOROUGH in Pitt *v.* Smith, 3 Camp., 33. Where in a suit for a specific performance of an agreement the defence set up was incapacity at the time of executing it, on the ground of intoxication: Held, that it could not assist in getting rid of the agreement on the mere ground of intoxication, no fraud having been alleged: Shaw *v.* Thackray, 17 Jur., 1045. The Courts as a matter of public policy do not decline, on the one hand, to lend their assistance to a person who has obtained an agreement or deed from another in a state of intoxication; and, on the other hand, they are equally unwilling to assist the intoxicated party to get rid of his agreement or deed, merely on the ground of his intoxication at the time; Cook *v.* Clayworth, 18 Vesey, 12; Newland on

Contracts, ch. 22, p. 365; Rich *v.* Sydenham, 1 Ch. Cas., 202; Bank *v.* McCoy, 19 P. F. S., 204.

A purchaser having paid part of the purchase money, and refusing to comply, the vendor being willing to do his part, cannot recover back what he has advanced: Housborough *v.* Peck, 5 Wall., 497; 7 Am. Law Reg., and notes 74–80; Rounds *v.* Baxter, 4 Greenl., 454; Morton *v.* Chandler, 6 Id., 142.

If no unfair advantage was taken, even though the party was drunk, it would not relieve him. If the alleged drunkenness was unknown to the vendor or his agents, it would not relieve Breinig from his contract. Breinig knew the conditions of sale and entered into the contract to comply, and paid part of the purchase money; each of these propositions should have been affirmed.

*Marcus C. L. Kline,* for defendant in error.—It is now a well settled rule of law in England as well as in the United States, that a contract made by a person so destitute of reason as not to know the consequences of his contract and what he is doing, though his incompetency be produced by intoxication, is voidable. One so intoxicated as not to know what he is doing has no capacity to contract. To render such a contract voidable, however, the intoxicated party to the transaction should have been so drunk as to have drowned reason, memory and judgment, and impaired his mental faculties for the time being. He must at the time be incapable of clearly perceiving and assenting, and must be intoxicated to such a degree that the party cannot assent understandingly: Van Wyck *v.* Brasher, 81 N. Y., 262; Heirs of French *v.* French *et al.*, 8 Ohio, 241; 31 Amer. Decis., 441; Wade *v.* Colvert, 12 Id., 652; Bates *v.* Ball, 72 Ill., 108; Gore *v.* Gibson, 13 Mees. & W., 623; State Bank *v.* McCoy, 69 Pa. St., 204; Chitty on Contracts, vol. 1., 11th Amer. Edition, 192; Kent's Commentaries, vol. 2, pp. 452–584; Benjamin on Sales, § 33, p. 42.

The rule is that such an intoxication as entirely deprives a party of the use of his reason must avoid an engagement entered into by him whilst in this state, even although it be procured by his own folly, and although no actual fraud be intended or practiced: Chitty on Contracts, vol. 1, 11th Amer. Edition, p. 192.

In Barrett *v.* Buxton, 2 Aikens, 167; 16 Amer. Decis., 691, it was held " that a note executed while the maker is intoxicated so as to be deprived of the exercise of his understanding is voidable by him, although his intoxication was voluntary and not procured by the circumvention of the other party." The same rule prevails in other states of the Union: Chitty

[Bush v. Breinig.]

on Contracts, vol. 1, p. 192; Seymour v. Delaney, 3 Cowen, 445; Wigglesworth v. Steers, 1 Hen. & Munf., 70; 3 Amer. Dec., 602.

Bush was a party to the contract, and it was his business to know the condition of the party with whom he contracted. Had Breinig given a note for the $495 whilst thus deprived of reason by intoxication, to Bush, payable at some future time, and had Bush indorsed the same to a third person before maturity for value, then clearly Breinig would be liable on said note to such third person, although drunk, he being an innocent holder and no party to the original contract: State Bank v. McCoy, 69 Pa. St., 204.

Bush must have had notice of his condition, having seen him drink, by his manner, handwriting, and other attendant circumstances. Notice may be inferred from circumstances sufficiently strong to cast a shade on the transaction: Story on Notes, § 198; Commonwealth v. Baldwin, 12 Pick., 151; Id., 545.

In Gore v. Gibson, 13 M. & W., 623, PARKE, B., says: "A person who takes an obligation from another under such circumstances is guilty of actual fraud."

Mr. Justice TRUNKEY delivered the opinion of the Court, October 4th, 1886.

When the plaintiff's bid was accepted the bargain was struck, and there was an oral agreement for the sale and purchase of the land on the terms stated in the conditions of sale. That agreement was not void, but voidable. Neither party could have compelled specific performance. Either would have a right of action for damages resulting from non-performance by the other; but the vendor could not tender a deed and recover the purchase money, for that would be enforcing specific performance; he could only recover the actual loss.

Upon the signing of the conditions, *prima facie*, there was a contract that could be specifically enforced. Money paid on either the oral or written contract could not be recovered unless there was cause for rescission. Here, it is conceded that there was an oral contract; but the plaintiff denies that he made a written contract and paid money and note thereon, because at the time his signatures and money were given he was incapable of making a contract by reason of drunkenness. If he was without reason and understanding the payment of the money ought not to be treated as voluntary, nor his signature as creating a new obligation. The conditions of sale may have been read in his hearing at the auction, and he may have understood them when he bid; but he paid no

money until the time of signing the alleged contract, and if he was then bereft of reason he may avoid the apparent obligation made while in that condition.

It is not a question whether what he did was the carrying out of a fair and reasonable oral contract, or whether the property was worth the sum bid; it is a question of his capacity to make a contract at the time he signed the conditions and paid the money. The subject of the contract was not necessary for himself or family; he took nothing into his possession and, therefore, had nothing to restore in the act of rescission; and he brought suit so promptly that at the trial the question of delay in rescinding was not raised.

The rule formerly was, that intoxication was no excuse, and created no privilege or plea in avoidance of a contract; but it is now settled according to the dictate of good sense and common justice, that a contract made by a person so destitute of reason as not to know the consequences of his contract, though his incompetency be produced by intoxication, is voidable, and may be avoided by himself, though the intoxication was voluntary, and not procured by the circumvention of the other party: Kent's Com., vol. 2, p. 451. A drunkard when in a complete state of intoxication, so as not to know what he is doing, has no capacity to contract in general; but his contract is voidable only and not void, and may therefore be ratified by him when he becomes sober: Benjamin on Sales, § 33.

The learned Judge of the Common Pleas instructed the jury that the plaintiff could recover only on the ground that the contract did not bind him because he was intoxicated to a degree that he did not know what he was doing at the time he affixed his seal and gave the money; that if he was in such a state of drunkenness as not to know what he was doing he cannot be compelled to perform the contract; and that if at the time of signing the contract he was able to comprehend the nature and effect thereof, the alleged intoxication is no defence. All that accords with principles so well settled as to be found in approved text books. They apply to a case like this; not where an intoxicated man gave his negotiable paper which had passed to an innocent holder for value, as was the case in State Bank *v.* McCoy, 69 Pa. St., 204.

In answer to the defendant's first point the Court charged, that the drunkenness of the plaintiff to relieve him from the contract must have been such that he did not know what he was doing; it must have been such as to suspend the use of reason and understanding. There is no error in that. True, the word "utterly" is omitted, which is used in the defining of the state of drunkenness, in Story's Eq. Jur., § 231; but the sense is not materially different; and that word is omitted

by many in the attempt to define the degree of intoxication and absence of reason. The point was well answered; its simple affirmance might have misled the jury; "unfair advantage" was not a question submitted.

The fifth assignment is not sustained. Although the question ought not to have been allowed when put, for the reason stated in the objection, very soon there was testimony that the witness was intoxicated at the time referred to in the question. No objection was made to its form, and its admission out of order was harmless.

None of the remaining assignments require special remark.

Judgment affirmed.